## THE THOMAS P. WAY, etc.

*(District Court, S. D. New York. December 20, 1884.)*

COLLISION—RULE 23—CHANGE OF COURSE—DEPARTURE IMMATERIAL.

Where a steamer ran into a yacht sailing on the wind, the steamer having first proposed to go astern of the yacht, but afterwards changed and undertook to go ahead of her, alleging that the yacht changed her course by luffing, and the libel also stating that the yacht did what she could to keep out of the way, *held*, upon the facts, that the yacht did not luff, but paid off; that though this was a departure by the yacht from rule 23, requiring her in such a case to keep her course, yet such departure was, in this case, immaterial, because it did not contribute to the collision, but tended to avert it, and that the steamer was wholly in fault, through lack of promptness in taking measures to keep out of the way.

In Admiralty.

*Howard A. Sperry* and *J. A. Hyland,* for libelant.

*Butler, Stillman & Hubbard* and *W. Mynderse,* for claimants.

BROWN, J. On the eleventh of September, 1883, as the yacht Ariel was beating up the Kills off West New Brighton, Staten island, she came in collision with the steam-boat Thomas P. Way, bound down, on her way from New York to Newark. The Kills at this point is about one-third of a mile wide. The collision was about 200 feet from the Jersey shore. The port bow of the Way struck the starboard bow of the yacht, carrying her along under her guards for some little distance, when, by backing, the steamer cleared and passed astern. The Way was going down the middle of the Kills at the rate of about 12 miles an hour. The yacht, having previously neared the Staten island shore, was seen to tack, come about, and make nearly across the Kills towards the Jersey shore. When about 600 to 700 feet distant from the Way, the latter, without changing her wheel, slowed down in order to pass under the stern of the yacht, which was then on the steamer's port bow. The captain of the steamer testifies that after this slowing, and while the Ariel was still upon his port bow, and when about 500 or 600 feet off, she came up into the wind, apparently designing to tack again towards the Staten island shore; and that he thereupon ported his wheel, and started up full speed in order to pass ahead of the yacht, but that soon afterwards, when the yacht was about 400 feet away, she paid off again,

when he immediately stopped and reversed his engines, but too late to avoid contact with the yacht, though the steamer at the collision had nearly stopped her forward course.

I have no doubt, upon the evidence, that the yacht did not "keep her course" upon her starboard tack, as required by the letter of rule 23, when the Way was nearly approaching her. The only change, however, which the evidence, aside from the captain's testimony, supports, is the change made by paying off more to the westward. This change could not have possibly contributed to the collision in this case, and hence is immaterial. *Waring* v. *Clarke*, 5 How. 465; *The E. A. Packer*, 20 Fed. Rep. 327; *Cayzer* v. *Carbon Co.* 9 App. Cas. 873. It tended, in fact, to postpone the collision, and gave to the Way more time for stopping. The yacht being in full view, and the channel unobstructed, the responsibility for the collision must rest wholly upon the steamer, under rule 20, unless some violation of the rules by the yacht tended to mislead the steamer and to thwart her efforts to avoid the collision. The yacht's paying off could not in this case have done either. That is not the change alleged or complained of by the steamer. She insists, and her defense must rest wholly upon this claim, that the Ariel luffed, and thereby gave the captain of the Way reasonable ground to suppose that she intended to come about again before reaching the line of his course, and that she thereby induced the steamer to change her maneuver, and to endeavor to pass ahead of her instead of passing astern, as at first intended. No witness, however, confirms the captain's testimony in this respect. Several testify positively that there was no luffing, no attempt to tack, and no change of course in that direction. The original libel, it is true, states that the sloop did "what she could to keep out of the way." This, however, is consistent with the testimony on her part, afterwards given, that these efforts were all made in keeping off, and not by luffing. While the change of maneuver adopted by the master when near to the yacht would be a circumstance entitled to a good deal of weight, as showing that there was probably some change in the sailing vessel's course that led to the other's change of maneuver, provided the change by the sailing vessel were corroborated by other testimony or other circumstances, still I cannot deem it sufficient, when opposed to so many witnesses testifying to the fact that the Ariel made no luff, and when not sustained by any other evidence than that of the master himself. I think the collision must, therefore, be set down to want of promptness on the part of the steamer in slowing, and in shaping her course to go astern of the yacht, or to some miscalculation by the captain of the steamer as to the yacht's speed. And this view is, I think, to some extent confirmed by the considerable distance, viz., some 400 or 500 feet, over which the steamer followed the yacht out of the line of her own course, so as to come within some 200 feet of the New Jersey shore. Decree for the libelants, with costs, with reference to ascertain the damages.